# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case No. |
| BRANDON MICHAEL BURRIER and | ) | 07-11337-SBB |
| DENON ARAE BURRIER, | ) | Chapter 13 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON MICHAEL BURRIER and | ) | |
| DENON ARAE BURRIER, | ) | |
| Respondents. | ) | |

**APPEARANCE:**

| | |
|---|---|
| Britney Beall-Eder, Esq. | Tara E. Gaschler, Esq. |
| CASTLE MEINHOLD & | THE GASCHLER LAW FIRM LLC |
| STAWIARSKI, LLC | 600 17th Street, Suite 2800 South |
| 999 18th Street, Suite 2201 | Denver, CO 80202 |
| Denver, CO 80202 | COUNSEL FOR BRANDON |
| COUNSEL FOR WELLS FARGO | MICHAEL BURRIER AND |
| BANK, N.A. | DENON ARAE BURRIER |

## MEMORANDUM OPINION AND ORDER DENYING WELLS FARGO BANK, N.A.'S VERIFIED MOTION FOR COURT TO ENFORCE TERMS OF STIPULATION AND FOR RELIEF FROM THE AUTOMATIC STAY (DOCKET # 59)

THIS MATTER came before the Court for a final evidentiary hearing on October 28, 2008, regarding the Verified Motion For Court to Enforce Terms of Stipulation and for Relief from the Automatic Stay filed by Wells Fargo Bank, N.A. ("Wells Fargo") on August 21, 2008 ("Motion for Entry of Order")[1] and the Response thereto filed by Brandon Michael Burrier and Denon Arae Burrier on August 22, 2008.[2]

The Court having conducted an evidentiary hearing, reviewed the pleadings in the within case file, and heard the testimony of Debtor Denon Burrier ("Ms. Burrier"), Wells Fargo employee Beverly DeCaro ("Ms. DeCaro"), and the arguments of counsel, makes the following findings of fact, conclusions of law and enters the following Order.

---

[1]     Docket #59.

[2]     Docket #60.

## I.      Overview

This appears to be an ordinary case where Debtors claimed they made certain mortgage payments, but the creditor disagrees and maintains the payments were not made and it has no record of the payments being made.  It is an extraordinary case, however, in that the evidence strongly suggests that the payments were indeed made by Debtors, but the creditor—here, Wells Fargo—has no record of the payments and has not credited the debtors' payments to their mortgage account.  The payments have, evidently, been lost in a black hole of the creditor's organization or through accounting mismanagement.

This case illustrates three things.  First, it reflects a significant and problematic imbalance between a creditor, the mortgage holder, and debtors, homeowners who are timely making their mortgage payments, and who are not knowledgeable about banking procedures and check processing.

Second, this case illustrates a major lender mortgage company whose operations and collections practices are seemingly disconnected from its own technologies.  Or, put another way, this is a major lender/mortgage loan servicer where the left hand does not know what the right hand is doing—the collection department does not know what the check processing and accounting departments are doing.

Third, this dispute might portend a widespread abuse of collection practices or creditor overreaching—demanding of debtors what it, the creditor itself, is unable to provide:  accurate and reliable record keeping and billing practices.

## II.     Background

On June 18, 2004, the Debtors executed a Deed of Trust and Note with NBank, N.A. which provided the Debtors with a loan for $183,126.00.[3]

The Note and Deed of Trust were subsequently negotiated to Wells Fargo Bank, N.A.

On February 21, 2007, Debtors filed for relief under Chapter 13 of the United States Bankruptcy Code at which time they also filed a Chapter 13 Plan. The Plan provided that Debtors were to pay $12,000.00 in prepetition arrears to Wells Fargo through the Plan[4].  In addition, the Debtors' Plan provided that they would pay regular post-petition mortgage payments directly to Wells Fargo. The Plan was confirmed on August 21, 2007 by Order of this Court.[5]   Immediately after confirmation, on August 26, 2007, the Debtors filed a Motion to Modify their confirmed Plan and also filed a Modified Plan to increase the arrearage to be paid

---

[3]      Creditor's Exhibits 1 and 2.

[4]      Docket #2.

[5]      Docket #27.

to Wells Fargo to $14,330.[6]  Thereafter, a Second Modified Plan was filed on November 28, 2007.[7]  The Court approved the Second Modified Plan by Order of this Court entered on December 65, 2007.[8]  The prepetition arrearage amount has not been altered since the First Modified Plan.

On February 26, 2008, Wells Fargo filed a Motion for Relief from Automatic Stay ("Motion") based upon the Debtors' alleged failure to make certain of their post-petition, post-confirmation monthly mortgage payments (June, July, October, and December 2007).  On March 20, 2008, Debtors filed a Response to Wells Fargo's Motion. In Debtors' Response, they denied that they failed to make payments and asserted that "at least three of the payments referenced in Paragraph 7 of the Motion have been made."

On April 11, 2008, the Debtors and Wells Fargo agreed to the terms of a Stipulation For Resolution of Motion for Relief From Automatic Stay and Motion For Acceptance of Stipulated Terms ("Stipulation"). On April 14, 2008, the Court issued an Order approving the Stipulation.

The Stipulation provided that the Debtors would pay: (a) for six months, an additional $1,046.82 per month due on the fifteenth day of each month to cure an alleged arrearage of $6,280.87, until the balance of the arrearages was paid in full, as well as (b) their regular monthly postpetition payment.  The additional payments under the Stipulation of $1,046.82 per month were to commence with the May 15, 2008 payment.  *However, the Stipulation also provided that, with regard to the four postpetition payments Wells Fargo said had not been made, if Debtors could show that the payments had, indeed, been made, then the Debtors' account would be credited with the payments.*  The Stipulation specifically provided, in pertinent part, that:

> Creditor has been provided with alleged proof of certain payments by the Debtors. At this time, insufficient information has been provided to Creditor to research the alleged payments.  In the event that Debtors provide "*sufficient information*" (as defined below) to Creditor to determine pursuant to the Colorado Uniform Commercial Code and other applicable law that all of the alleged payments contemplated by this stipulation were negotiated, cleared, and were paid by the Debtors' banking institution and, therefore, the payments should be credited to the loan secured by the Deed of Trust then: (a) Creditor will amend the stipulation to reflect that these payments have been credited to Debtors' account; and (b) Creditor will reimburse Debtors' counsel $400.00.  *Under*

---

[6]     Docket #s 29 and 30.

[7]     Docket #38.  The Second Modified Plan also had as the arrearage owed to Wells Fargo the sum of $14,330.00.

[8]     Docket #42.

>*this Stipulation, the term "sufficient information" describes only*
>*valid, accurate, and true copies of the front side and back side of*
>*all negotiable instruments (e.g. personal banking checks) executed*
>*by the Debtors that indicate clearly and unequivocally that such*
>*negotiable instruments were negotiated by the Debtors' banking*
>*institution.*[9]

In other words, per the Stipulation, if the Debtors could produce true copies of their personal banking checks which demonstrated the "missing" payments had, indeed, been paid, then Wells Fargo would appropriately credit the Debtors' mortgage debt.

On August 21, 2008, Wells Fargo filed a Verified Motion For Court to Enforce Terms of Stipulation and for Relief from the Automatic Stay ("Verified Motion").  Wells Fargo, by its Verified Motion asserts that Debtors have failed to comply with the terms of the Stipulation and requests an order of relief from stay.  Debtors have filed a Response opposing the Verified Motion asserting that they were unable to comply with the terms of the Stipulation (i.e., produce "... true copies of all negotiable instruments (e.g. personal banking checks)") due to the fact that the mortgage payments were not processed by Wells Fargo in a manner in which cancelled checks were made available.  Thus, Debtors maintain they were unable to comply due to impossibility of performance.

The Court held an evidentiary hearing on this matter on October 28, 2008.  The Debtor, Ms. Burrier, testified that she asked her bank multiple times for proof that the payments were actually made to Wells Fargo, but was unable to obtain documentation—copies of their checks—because, according to her testimony,  the checks were processed electronically and not negotiated in the more conventional manner—through the Federal Reserve System.

Ms. Burrier testified that she went to her bank, Academy Bank, on several occasions, seeking to obtain proof that the checks cleared and payments were debited from her account, but that such documentation—cancelled checks—was unavailable.  Debtors did not present during their case a corroborating witness representative from Academy Bank.[10]  Nevertheless, the parties stipulated to the admission of Debtors' Exhibits A-D, which were copies of the Debtors' bank account statements for June, July, October, and December of 2007 (the months during which Wells Fargo claims payments were not made to it by the Debtors).  Exhibits A-D reflected the following:

• Exhibit A reflected that a check numbered 4230 in the amount of $1,470.00 was

---

[9]      Emphasis added.

[10]      At the preliminary hearing held regarding this matter, the Debtors indicated that they would call a representative from Academy Bank to testify that all payments alleged to be owed by the Debtors to Wells Fargo had been charged to the Debtors' bank account at Academy Bank and that the manner of payment was such that Academy Bank could not provide copies of the cancelled checks.  Debtors, prior to the October 28, 2008 hearing in this matter, filed a Witness and Exhibit List, which list did not include a representative from Academy Bank.

processed electronically by "WFHM"on June 15, 2007.

- Exhibit B reflected that a check numbered 4238 in the amount of $1,470.00 was processed electronically by "WFHM" on July 16, 2007.

- Exhibit C reflected that a check numbered 4245 in the amount of $1,600.00 was processed electronically by "WFHM" on October 16, 2007.

- Exhibit D reflected that a check numbered 4182 in the amount of $1,600.00 was processed electronically by "WFHM" on December 17, 2007.

In addition, during the testimony of Ms. Burrier, Debtors' Exhibits E, F, G, and H were offered and admitted, without objection, during her testimony. Exhibits E-H reflected the following:

- Exhibit E is a check carbon for check number 4230 reflecting that the sum of $1,470.00 was paid to Wells Fargo.

- Exhibit F is a check carbon for check number 4238 in the amount of $1,470.00 payable to Wells Fargo.

- Exhibit G is a check carbon for check number 4245 in the amount of $1,600.00 payable to Wells Fargo.

- Exhibit H is a check carbon for check number 4182 in the amount of $1,600.00 payable to Wells Fargo.

Debtors maintain that they tried multiple times to comply with the Stipulation by obtaining copies of their check payments, front and back side, as required. However, Debtors assert that due to the method by which the payments were negotiated, Debtors were unable to obtain the documentation required by the Stipulation, specifically, cancelled checks.

Instead, the Debtors provided documentation to Wells Fargo of the alleged missed payments in the form of the Debtors' Academy Bank statements (Exhibits A-D) and carbon copies of checks (Exhibits E-H). The Debtors' bank statements, which were not objected to by Wells Fargo and thus were admitted by this Court, indicate that payments in the identified amounts were debited from Debtors' bank account and sent to "WFHM." The Debtors' bank statements and carbons of the respective checks are persuasive evidence that payments were made by Debtors to Wells Fargo for the mortgage payments in question.

## III.    Issue Presented

A number of issues have been presented by the parties in this matter. The majority of those issues are premised on whether relief from the automatic stay should be granted and whether the "doctrine of impossibility" precludes relief from the automatic stay. The Court

concludes that the central issue is simply this: under the circumstances presented, is the Stipulation a valid and enforceable contract such that relief from the automatic stay should be granted to Wells Fargo?

## IV.   Conclusions of Law

### A.   A Stipulation Constitutes a Contract; as Such the Burden of Proof is on Wells Fargo

A settlement agreement is nothing more than a contract.[11]  Here, the Stipulation between the parties is a contract.  The question before this Court is not whether relief from the automatic stay should be granted under 11 U.S.C. § 362, but whether this Stipulation is valid and enforceable.[12]  The burden of proof is upon the party seeking to enforce the contract, here, Wells Fargo.[13]  The Court further concludes that the standard of proof is the preponderance of the evidence standard.[14]  The Court concludes that Wells Fargo has not met its burden of proof.  Wells Fargo has not stepped forward and provided evidence that the payments were not made to rebut the evidence produced by the Debtors that the payments were made.

### B.   Check Clearing for the 21st Century Act

To this Court's surprise and consternation, neither party addressed the Check Clearing for the 21st Century Act.[15]  This is especially troubling since Wells Fargo was one of the proponents of this cost saving Act and modernization of banking.[16]  According to the Federal Reserve website regarding the Check Clearing for the 21st Century Act:

> The Check Clearing for the 21st Century Act (Check 21) was signed into law on October 28, 2003, and became effective on

---

[11]      *See Consumers Gas & Oil, Inc. v. Farmland Industries, Inc.,* 84 F.3d 367 (10th Cir. 1996).

[12]      If the matter at issue was relief from the automatic stay, the applicable burden of proof would be found under 11 U.S.C. § 362(g). That is, the burden would be as follows:

> (1)      the party requesting such relief has the burden of proof on the issue of the debtor's equity in the property; and
> (2)      the party opposing such relief has the burden of proof on all other issues.

[13]      *Dittbrenner v. Myerson,* 114 Colo. 448, 460, 167 P.2d 15, 21 (Colo. 1946); see, *In re BTS, Inc.,* 104 B.R. 1009, 1012 (Bankr. W.D. Mo. 1989).

[14]      *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991).

[15]      12 U.S.C. § 5001 *et seq.*

[16]      Wells Fargo Commercial, "Check 21 Improves Payment Processing Efficiency," https://www.wellsfargo.com/com/check21/index.jhtml (last visited 12/22/2008).

October 28, 2004.  Check 21 is designed to foster innovation in the payments system and to enhance its efficiency by reducing some of the legal impediments to check truncation.  The law facilitates check truncation by creating a new negotiable instrument called a substitute check, which permits banks to truncate original checks, to process check information electronically, and to deliver substitute checks to banks that want to continue receiving paper checks.  A substitute check is the legal equivalent of the original check and includes all the information contained on the original check.  The law does not require banks to accept checks in electronic form nor does it require banks to use the new authority granted by the act to create substitute checks.[17]

For the uninitiated, such as was this Court before conducting its research in this matter, "check truncation" means:

The conversion of data on a check into an electronic image after a check enters the processing system.  *Check truncation eliminates the need to return canceled checks to customers*.[18]

Moreover, the term "truncate" as defined by 12 U.S.C. § 5002(18) means:

to remove an original paper check from the check collection or return process and send to a recipient, in lieu of such original paper check, a substitute check, or, by agreement information relating to the original check (including data taken from the MICR line of the original check or an electronic image of the original check), whether with or without subsequent delivery of the original paper check.[19]

Based upon this Court's own research, it appears that the *"sufficient information"* as

---

[17]     Federal Reserve Board: Check Clearing for the 21st Century, http://www.federalreserve.gov/paymentsystems/truncation/ (last visited 12/22/2008).

[18]     United States Department of the Treasury, Comptroller of the Currency Administrator of National Banks, Dictionary of Banking Terms and Phrases, http://www.helpwithmybank.gov/dictionary/index.html#c (last visited 12/22/2008) (emphasis added).

[19]     12 U.S.C. § 5002(12) addresses the term MICR line:

The terms "MICR line" and "magnetic ink character recognition line" mean the numbers, which may include the bank routing number, account number, check number, check amount, and other information, that are printed near the bottom of a check in magnetic ink in accordance with generally applicable industry standards.

required by Wells Fargo in the subject Stipulation may no longer be valid—and may no longer even be available—in today's marketplace.[20]  That is, Wells Fargo's demanded proof of payment, which was *"only valid, accurate, and true copies of the front side and back side of all negotiable instruments (e.g. personal banking checks) executed by the Debtors that indicate clearly and unequivocally that such negotiable instruments were negotiated by the Debtors' banking institution,"* may no longer be required or available in the banking industry.

Key to this case and interpretation of the issues before the Court is *"what is the generally applicable industry standard"* with respect to electronically processed checks.[21]  The burden on this issue is on Wells Fargo as the party attempting to enforce the Stipulation.[22]  In particular, 12 U.S.C. § 5002(18), which provides for "truncation," permits a bank to remove and destroy an original paper check and process it by transferring information, among other ways, "by agreement" evidently between banking institutions.  *This Court has heard no testimony with respect to the practices and procedures of Wells Fargo with respect to the Check Clearing for the 21st Century Act and Wells Fargo's electronic check processing procedures.*

### C.    Impossibility of Performance and Rescision

In this case, Debtors argue the Stipulation is void due to inability to perform the terms of the Stipulation.  The Debtors argue that "impossibility of performance" precludes the enforcement of the Stipulation.  Specifically, Debtors argue that the terms of the Stipulation

---

[20]    *See* 12 U.S.C. § 5002(6), which provides:

The term "check"- -
(A)    means a draft, payable on demand and drawn on or payable through or at an office of a bank, whether or not negotiable, that is handled for forward collection or return, including a substitute check and a travelers check; and
(B)    does not include a noncash item or an item payable in a medium other than United States dollars.

Under 12 U.S.C. § 5002(16),

The terms "substitute check" means paper reproduction of the original check that - -
(A)    contains an image of the front and back of the original check;
(B)    bears a MICR line containing all the information appearing on the MICR line of the original check, except as provided under generally applicable industry standards for substitute checks to facilitate the processing of substitute checks;
(C)    conforms, in paper stock, dimension, and otherwise, with generally applicable industry standards for substitute checks; and
(D)    is suitable for automated processing in the same manner as the original check.

[21]    *See, e.g.,*  12 U.S.C. § 5002(16)(B) and (C).

[22]    *See infra* Part IV.A.

required them to provide documents that were *not available* to them—and possibly do not exist —due to the method by which Wells Fargo processed the payments. The most reasonable inference the Court can draw from the evidence is that the payments were processed electronically–that is, the checks were processed and cleared via the Check Clearing for the 21st Century Act processes. As a result, the mortgage payment checks sent by the Debtors to Wells Fargo were not returned to their bank, Academy Bank, and therefore the Debtors could not provide canceled checks to satisfy the "sufficient information" mandate of the Stipulation.[23]

The Court concludes that the defense of "impossibility of performance" is subject to a very high standard, but that it *was* reached here. A party asserting an affirmative defense has the burden of proving the affirmative defense.[24] In Colorado, an affirmative defense must be established by the party who asserts it.[25] In order to establish the defense of impossibility of performance, it is necessary to demonstrate changed circumstances, which have made the "promise vitally different from what reasonably should have been within the contemplation of both parties when they entered into the contract."[26] In this case, when the Stipulation was entered into, the evidence demonstrates that, *at least the Debtors,* did not have knowledge that the canceled checks—specifically *"valid, accurate, and true copies of the front side and back side of all negotiable instruments (e.g. personal banking checks) executed by the Debtors that indicate clearly and unequivocally that such negotiable instruments were negotiated by the Debtors' banking institution"*—as demanded in the agreement were unavailable. Generally, if the occurrence is reasonably foreseeable, the courts typically take the position that the promissor has assumed the risk of impossibility or frustration.[27] However, no evidence was presented demonstrating that the Debtors could have reasonably foreseen the risk here—that is, that check copies—specifically *"valid, accurate, and true copies of the front side and back side of all negotiable instruments (e.g. personal banking checks) executed by the Debtors that indicate clearly and unequivocally that such negotiable instruments were negotiated by the Debtors' banking institution"*—would not be available. If anything, Wells Fargo, being in the banking industry and more knowledgeable about and facile with the technology and the compliance

---

[23]  Evidently, the only institution or agent which may have the Debtors' original checks, or who could generate from the original checks, the "substitute checks" in accordance with the Check Clearing for the 21st Century Act, would be Wells Fargo. But Wells Fargo maintained at trial and has maintained all along that after a complete and comprehensive check of all its records, that it has no proof—*no evidence whatsoever*—of the Debtors' mortgage payments for June, July, October and December 2007.

[24]  *In re Wells*, 51 B.R. 563, 567 (Bankr. Colo. 1985), abrogated on other grounds, *Raleigh v. Ill. Dept' of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1251, 147 L.E d.2d 13 (2000).

[25]  *See Hickman-Lunbeck Grocery Co. v. Hager*, 75 Colo. 554, 562,  227 P. 829, 832-33 (Colo. 1924).

[26]  *Magnetic Copy Serv., Inc. v. Seismic Spec., Inc.,* 805 P.2d 1161, 1165 (Colo. App. 1991), quoting *Littleton v. Employers Fire Insurance Co.,* 169 Colo. 104, 108, 453 P.2d 810, 812 (1969) which, in turn, was quoting 6 Williston, *Contracts* § 1931 (rev. ed).

[27]  *Magnetic Copy Serv., Inc.,* 805 P.2d at 1165.

features of the Check Clearing for the 21st Century Act, could have foreseen this risk.[28] Nevertheless, Wells Fargo did not present to this Court any expert who could testify as to how electronic transfers occur.

Ms. Burrier's testimony regarding her reasonable efforts to obtain the cancelled checks is persuasive. The stipulated Debtors' Exhibits A-D show that certain payments were made to "WFHM." The Debtors' account was shown on the bank statements to have been debited in favor of "WFHM" for each of the months Debtors allegedly failed to make the respective mortgage payments. Moreover, the unrefuted evidence as contained in Debtors' Exhibits E-H, reflects that the corresponding checks were written by the Debtors for each of the respective months. The Court would have been greatly aided if material evidence, preferably expert testimony, explaining the process and mechanics of "paperless" electronic mortgage payments of the sort here performed, was provided. Wells Fargo provided no such evidence. Wells Fargo did not carry its burden of going forward, refuting Debtors' evidence of payment, or otherwise demonstrating lack of payments by the Debtors.

While Wells Fargo's representative Ms. DeCaro's testimony unambiguously maintained that the Debtors' mortgage payments were *never* received by Wells Fargo, her testimony also asserted that she attempted to see if any related Wells Fargo entities received the payments. It is unclear which entities she inquired of or if the inquiry was complete.[29] The Court, based on the evidence presented, cannot conclude that Wells Fargo and/or its related entities did *not* process the payments electronically. Moreover, because Wells Fargo—the party seeking enforcement of the Stipulation and upon whom the burden rests—did not present any testimony (expert or otherwise) with respect to electronic payment processing, this Court cannot conclude that payments were *not* made.

While impossibility of performance is applicable under the circumstances of this case, this Court also concludes that there was no mutuality in contracting here. Thus, this Stipulation is subject to rescision. "A party may rescind a contract when, at the time the contract is made, the parties make a mutual mistake about a material fact, the existence of which is a basic assumption of the contract."[30] It is evident from the testimony that neither party fully anticipated the difficulty of tracing checks in an electronic age. In this electronic age, the requirement that "sufficient information" constitutes *only* "valid, accurate, and true copies of the front side and

---

[28]     Since Wells Fargo crafted the Stipulation, in accordance with 12 U.S.C. § 5001(a), it would appear appropriate that Wells Fargo should have given some sort of notice with respect to the Check Clearing for the 21st Century Act if it intended to process checks electronically.

[29]     The proposed order submitted by Wells Fargo, at note 1 thereof, stated that: "Creditor completed extensive research to attempt to locate the disputed payments in its systems, including contacting related entities and completing an ACH trace on the alleged payments through its banking institution." Nevertheless the extent and completeness of this inquiry is not entirely clear to this Court. As this Court has previously addressed in another opinion, the complexity and confusion of the Wells Fargo related entities is problematic. *In re Sullivan,* 357 B.R. 847, 850 n.1 (Bankr. D.Colo. 2006).

[30]     *Beals v. Tri-B Assoc.,* 644 P.2d 78, 80 (Colo. App. 1982).

back side of all negotiable instruments (e.g. personal banking checks) executed by the Debtors that indicate clearly and unequivocally that such negotiable instruments were negotiated by the Debtors' banking institution" may be obsolete.  If Wells Fargo requires such precision, such precision will be required of it in enforcing stipulations.  Wells Fargo did not meet its burden in this case and relief will be denied accordingly.  The Court concludes that the Stipulation is unenforceable.

### D.       Sanctions

Debtors have orally requested sanctions during the evidentiary hearing and the proposed order submitted also suggests that sanctions are appropriate.  The Court concludes that the sanction questions is not properly before the Court.  If Debtors intend to seek sanctions they should do so by a separate motion filed on or before January 9, 2009.  If a motion for sanctions is filed, Wells Fargo shall have until January 23, 2009 to file a response thereto.

## V.       Order

IT IS THEREFORE ORDERED that the Motion for Entry of Order is DENIED.

Dated this 22nd day of December , 2008.

BY THE COURT:

_____

Sidney B. Brooks,
United States Bankruptcy Judge