# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sidney B. Brooks

In re:                                                  Bankruptcy Case No.
                                                        07-11337-SBB
                                                        Chapter 13

BRANDON MICHAEL BURRIER,
DENON ARAE BURRIER,
Debtors,


WELLS FARGO BANK, N.A.,
Movant,


BRANDON MICHAEL BURRIER,
DENON ARAE BURRIER, and
Sally J. Zeman,
the Chapter 13 Trustee,
Respondents.

**APPEARANCES:**

| | |
|---|---|
| Britney Beall-Eder, Esq. | Tara E. Gaschler, Esq. |
| Deanna Westfall, Esq. | THE GASCHLER LAW FIRM, LLC |
| CASTLE MEINHOLD & | 600 17th Street, Suite 2800 South |
|    STAWIARSKI, LLC | Denver, CO  80202 |
| 999 18th Street, Suite 2201 | COUNSEL FOR DEBTORS |
| Denver, CO  80202 | |
| COUNSEL FOR WELLS FARGO | Kevin O'Shaughnessy, Esq. |
| BANK, N.A. | 1177 Grant Street, Suite 108 |
| | Denver, CO  80203 |
| Gregory Garvin, Esq. | COUNSEL FOR DEBTORS |
| United States Trustee's Office | |
| 999 18th Street, Suite 1551 | Stephen Berken, Esq. |
| Denver, CO  80202 | 1159 Delaware Street |
| COUNSEL FOR UNITED STATES | Denver, CO  80204 |
| TRUSTEE | COUNSEL FOR TARA GASCHLER |

---

## MEMORANDUM OPINION AND ORDER GRANTING
## WELLS FARGO BANK'S MOTION FOR RELIEF
## FROM ORDER ENTERED DECEMBER 22, 2008

---

This matter is before the Court on *Wells Fargo Bank's Motion for Relief from Order Entered December 22, 2008 Entitled: Memorandum Opinion and Order Denying Wells Fargo Bank N.A.'s Motion for Court to Enforce Terms of Stipulation and for Relief from the Automatic Stay*[1] and *Supplement*[2] filed thereto.  The Court, having considered the evidence presented on March 17, 2009, and being advised in the premises, hereby finds and orders as follows:

## I.    FINDINGS OF FACT

1.      Debtors filed a Chapter 13 bankruptcy on February 21, 2007.

2.      On February 26, 2008, Wells Fargo Bank, N.A. ("Wells Fargo") filed a Motion for Relief from Automatic Stay ("Motion") based upon the Debtors' failure to make their post-petition monthly mortgage payments to Wells Fargo.[3]  At the time of Wells Fargo's Motion, Creditor alleged that Debtors were four payments in arrears on their post-petition obligation to Wells Fargo.

3.      On April 11, 2008, the Debtors and Wells Fargo agreed to the terms of a Stipulation for Resolution of Motion for Relief from Automatic Stay and Motion for Acceptance of Stipulated Terms ("Stipulation").[4]  On April 14, 2008, the Court approved the Stipulation by Order of Court.[5]

4.      The Stipulation provided that Debtors would pay an additional $1,046.82 per month due on the fifteenth day of each month, as well as their regular monthly post-petition payment, until the balance of the arrearages was paid in full. The additional payments under the Stipulation were to commence with the May 14, 2008 payment.

5.      Also included within the Stipulation was the following paragraph:

Creditor has been provided with alleged proof of certain payments by the Debtors.  At this time, insufficient information has been provided to Creditor to research the alleged payments.  In the event that Debtors provide "sufficient information" (as defined below) to Creditor to determine pursuant to the Colorado Uniform Commercial Code and other applicable law that all of the alleged payments contemplated by this stipulation were negotiated, cleared, and were paid by the Debtors' banking institution and, therefore, the payments should be credited to the loan secured by the Deed of Trust then:  (a) Creditor will amend the stipulation to reflect that these payments have been credited to Debtors' account; and (b) Creditor will reimburse Debtors' counsel $400.00.  Under this Stipulation, the term "sufficient information" describes only valid, accurate, and true copies of the front side and back side of all negotiable

---
[1] Docket #93.
[2] Docket #103.
[3] Docket #48.
[4] Docket #52.
[5] Docket #54.

instruments (e.g. personal banking checks) executed by the Debtors that indicate clearly and unequivocally that such negotiable instruments were negotiated by the Debtors' banking institution.

6.      As a result of the Debtors failure to abide by the terms of the Stipulation, Wells Fargo filed its Verified Motion for Court to Enforce Terms of Stipulation and for Relief from the Automatic Stay. [6]

7.      An evidentiary hearing on Wells Fargo's Verified Motion was held on October 28, 2008.  At said hearing, the Court heard testimony from Beverly DeCaro of Wells Fargo Bank, N.A.  The Court also heard testimony from Debtor, Denon Arae Burrier.  The disputed issues between the parties focused on whether four mortgage payments, for the post-petition months of June, July, October and December, 2007, had been made to Wells Fargo.

8.      Wells Fargo presented evidence that Wells Fargo never received, nor credited, Debtors' post-petition payments for the months of June, July, October or December, 2007. Wells Fargo further submitted testimony that it had no record of receipt of the alleged payments, despite numerous searches of its records and entities.[7]

9.      Debtor, Denon Arae Burrier, testified that she wrote checks for the post-petition months of June, July, October and December, 2007, and that these payments cleared her checking account with Academy Bank.[8]

10.     When asked whether she altered or changed the July, 2007 check carbon copy that Debtor contended evidenced payment to Wells Fargo, Debtor replied:

> Absolutely not.  Well, I wrote 'cleared' on it when it cleared the bank.  And then, I wrote July of '07 when I was sending them over to Kevin [counsel].[9]

11.     In support of her testimony, Debtor submitted evidence to the Court of bank statements showing debits from Debtors' Academy Bank account in the amount of the alleged mortgage payments for the months of June, July, October and December, 2007.[10]

12.     Debtor further testified that it was impossible to produce "sufficient information," as set forth under the terms of the Stipulation, to evidence payment to Wells Fargo because the alleged checks were "processed electronically."[11]

---

[6] Docket #59.
[7] Transcript of Evidentiary Hearing Re:  Wells Fargo Bank N.A.'s Verified Motion for Court to Enforce Terms of Stipulation and for Relief from Automatic Stay (October 28, 2008) at 26-27.
[8] *Id*. at 33-44.
[9] *Id.* at 39.
[10] *Id.*; s*ee* Exhibits A-D, subsequently labeled as Exhibits 1-4 for the March 17, 2009 Hearing.
[11] *Id*. at 34.

13.     Debtor was adamant in her testimony that Wells Fargo debited her checking account for the alleged amounts in dispute.  In regards to the alleged October, 2007 payment, Debtor's counsel asked Debtor on direct:  "So the bank took the money out of your account and gave it to Wells Fargo Home Mortgage?"  Debtor replied, "Absolutely."[12]

14.     Debtor's counsel specifically asked Debtor whether she forged any of the carbon copies of the alleged checks.  Debtor's counsel asked:

> So, in order to forge these, you would have had to write the check somewhere else, have the payment somewhere else come out of the bank or come up with a whole new set of carbon checks that had exactly the same check numbers and use those.  Did you do that?

Debtor replied:

> No, I don't have time to do that.  I have two small children.[13]

15.     A representative of Academy Bank was neither subpoenaed nor present at the evidentiary hearing held on October 28, 2008.[14]

16.     Based primarily on (a) the testimony of Ms. Burrier and (b) the documentary evidence reflecting mortgage payment debits to the Debtors' Academy Bank account which she presented at the October 28, hearing, the Court determined that the Debtors had met their burden of proving payments had been made to Wells Fargo.  Specifically, the Court found that the bank statements,[15] which purported to show debits to their account at Academy Bank, were satisfactory and persuasive evidence that mortgage payments had, indeed, been made to "WFHM" or Wells Fargo Home Mortgage for the post-petition months of June, July, October and December, 2007.[16]

17.     The Court further concluded that the Debtors' having produced documentary evidence—the Academy Bank statements—which corroborated and supported the Debtors' testimony that they remitted the subject mortgage payments, had made a prima facie case that payments had been made, and the burden of persuasion, or otherwise refuting that evidence, was then on Wells Fargo.  And, Wells Fargo was not able to refute that evidence.

18.     Under the doctrine of impossibility, the Court set aside the parties' prior Stipulation and denied relief from the automatic stay to Wells Fargo, finding that the

---

[12] *Id,* at 40.
[13] *Id.,* at 49.
[14] Debtors indicated in their original Exhibit & Witness List that they would present a witness from Academy Bank.  None was presented.
[15] Exhibits A-D at the October 28, 2008 hearing, re-labeled and admitted as Exhibits 1-4 at the March 17, 2009 hearing.
[16] Docket #80.

Debtors had made the alleged payments.  The Court's opinion was especially critical of Wells Fargo's accounting system and their inability to locate the alleged payments.

19.     Neither the Court, nor Wells Fargo, considered the possibility that the evidence submitted by the Debtors was altered and fabricated, and therefore, did not represent true and accurate copies of bank statements from Academy Bank.

20.     After receiving the Court's Order of December 22, 2008, and based upon the continued absence of any record of receipt of the payments, Wells Fargo inquired whether there might be another possible explanation as to why the payments were only appearing on the Debtors' records, but not on Wells Fargo's extensive searches.

21.     Wells Fargo's inquiry led it to discover that Debtors' evidence submitted at the evidentiary hearing had been altered.

22.     On January 8, 2009, Wells Fargo filed its Motion for Relief from Order Entered December 22, 2008 Entitled: Memorandum Opinion and Order Denying Wells Fargo Bank N.A.'s Motion for Court to Enforce Terms of Stipulation and for Relief from Stay ("Motion").[17]

23.     On January 12, 2009, counsel for Wells Fargo issued a Subpoena to Academy Bank requesting copies of the relevant checks and bank statements pertinent to the hearing conducted in this matter on October 28, 2008.

24.     On January 27, 2009, Wells Fargo filed its Supplement to Motion, submitting the records produced by Academy Bank pursuant to subpoena.[18]

25.     The Court provided the Debtors with an opportunity to respond to the allegations set forth in Wells Fargo's Motion and Supplement and scheduled a hearing on Wells Fargo's Motion.[19]

26.     No response was filed by the Debtors. However, Debtors' counsel, O'Shaughnessy and Gaschler filed motions to withdraw as counsel, citing as cause for the motions, "irreconcilable differences."

27.     On March 17, 2009, this Court conducted a hearing on Wells Fargo's Motion and Supplement and Counsels' Motions to Withdraw.

28.     After ensuring that the Debtors had been properly advised of their rights and obligations to the Court, the Court allowed Debtors' counsel to withdraw.

---

[17] Docket #93.
[18] Docket #103.
[19] Docket #107.

29.     The remainder of the March 17, 2009 hearing specifically considered whether the previously submitted proofs of payment were in fact valid evidence of payments made to Wells Fargo.

30.     Wells Fargo tendered for admission into evidence Debtors' previously submitted bank statements as Exhibits 1-5 and the subpoenaed Academy Bank records, labeled as Exhibits 7 through 11, including the months of June, July, October and December, 2007.  The Court duly admitted Exhibits 1-5 and 7 through 11.[20]

31.     Debtor, Denon Arae Burrier, appeared at the hearing.  Debtor, Brandon Michael Burrier, failed to appear.  Ms. Burrier indicated that both she and Mr. Burrier were invoking their Fifth Amendment right not to self-incriminate.[21]  Accordingly, Ms. Burrier did not sit for cross-examination or offer any evidence at the hearing.

32.     Katherine Lynn Works testified as the custodian of records from Academy Bank with regard to the subpoenaed bank records submitted with Wells Fargo's Supplement to Motion.[22]

33.     Ms. Works testified that the subpoenaed bank records from Academy Bank were the true and correct bank records pertaining to the Debtors' checking account with Academy Bank.  Specifically, with regard to the alleged payments made for the post-petition months of June, July, October and December, 2007, Ms. Works testified that:

a.     With respect to the alleged June, 2007 post-petition payment allegedly payable to WFHM, referenced by Debtor as check number 4230 at the prior hearing, Academy Bank's records reflect that no such check number was presented or negotiated on the account.

b.     With respect to the alleged July, 2007 post-petition payment allegedly payable to WFHM, referenced by Debtor as check number 4238 at the prior hearing, Academy Bank's records reflect that the check was presented for payment to CASH and was not negotiated to WFHM, as reflected on the Debtors' prior statements presented to the Court.[23]

c.     With respect to the alleged October, 2007 post-petition payment allegedly payable to WFHM, referenced by Debtor as check number 4245 at the prior

---

[20] Transcript of Evidentiary Hearing Re:  Wells Fargo Bank, N.A.'s Motion For Relief From Order Entered December 22, 2008 Entitled:  Memorandum Opinion And Order Denying Wells Fargo Bank N.A.'s Verified Motion For Court To Enforce Terms of Stipulation And For Relief From Automatic Stay (March 17, 2009) at 20 (The exhibits include a complete record of Debtors' account from January 2007 to January 2008.  Exhibit 6, the transcripts of the September 3, 2008 hearing and the October 28, 2008 hearing, was also admitted into evidence).
[21] Transcript of Hearing at 15 and 35.
[22] *Id*. at 17-31.
[23] *Id*. at 28.

hearing, Academy Bank's records reflect that no such check number was presented for payment or negotiated on the account.[24]

       d.    With respect to the alleged December, 2007 post-petition payment allegedly payable to WFHM, referenced by Debtor as check number 4182 at the prior hearing, Academy Bank's records reflect that no such check number was presented for payment or negotiated on the account.[25]

       e.    With respect to each of the alleged payments, Ms. Works testified that the payments did not appear on the official Academy Bank statements. She testified that the statements previously submitted as Exhibits A-D, re-labeled Exhibits 1-4, must have been altered by Debtors.[26]

       f.    Ms. Works further testified that it would be impossible for a payment to appear on an Academy Bank statement and then disappear from a later version of the same month's statement. She testified that based upon her personal knowledge, the only way a payment could appear differently on one version of a statement versus another would be if a customer were to retrieve a statement upon request from a branch, and then alter the statement themselves.[27]

       g.    As further evidence that the bank statements previously submitted to the Court were altered, Ms. Works testified that one of the entries on the previously submitted June statement occurred on a Saturday, and no checks are presented for payment on any Saturday because the Federal Reserve is not open.[28]

## II.   CONCLUSIONS OF LAW

The issue before the Court is whether the Order Entered December 22, 2008 Entitled: Memorandum Opinion And Order Denying Wells Fargo Bank N.A.'s Verified Motion For Court To Enforce Terms of Stipulation And For Relief From Automatic Stay should be set-aside pursuant to Rule 9024, FED. R. BANKR. P., incorporating Rule 60(b)(3), FED. R. CIV. P. Based upon the evidence and testimony from Academy Bank, and Debtor's refusal to testify or refute such testimony, there can be no other conclusion than Debtors' prior testimony was false and misleading, and further, the evidence submitted by Debtors was fabricated and altered.

The Debtors misled the Court and Wells Fargo by submitting fraudulent evidence to the Court. The Debtors' fraudulent evidence was the product of careful, deliberate, specific and repeated acts. The Debtors intended to and did mislead the Court. Further, the Debtors made a calculated and an effective effort to mislead the Court; clearly, it was no accident.

---

[24] *Id*. at 28-29.
[25] *Id*. at 29-30.
[26] *Id*. at 30.
[27] *Id*. at 25 and 30.
[28] *Id*. at 25-27.

The Debtors fraudulent testimony and evidence resulted in a misplaced and incorrect criticism of Wells Fargo's procedures and record keeping in the Court's prior opinion. The Court's prior criticism towards Wells Fargo was a mistake. It was a mistake based upon incorrect factual conclusions, as a result of what appears to be, and for which there is no other plausible explanation, than Debtors fabricated and altered evidence submitted in support of their position at the prior hearing. It is evident that the Debtor, Ms. Denon Arae Burrier, provided false testimony to the Court on October 28, 2008.

Pursuant to Rule 9024, FED. R. BANKR. P., incorporating Rule 60(b)(3), FED. R. CIV. P., the Court may relieve a party from a final judgment or order based upon fraud, misrepresentation, or misconduct by an opposing party.[29] "Relief under the rule may be granted when the application is clearly substantiated by adequate proof."[30]

The testimony from Academy Bank was effective in overcoming and overwhelming the evidence submitted by the Debtors at the prior hearing. Moreover, the testimony from Academy Bank revealed the intrinsic fraud which led to a prior judgment founded on perjured testimony and altered evidence. In sum, the testimony of Academy Bank proved that the Debtors prior testimony was nothing more than a fabricated story–a lie. No payment was ever presented for payment or negotiated to Wells Fargo in June, July, October or December, 2007.

Additionally, the testimony of Academy Bank proved that Debtors manipulated and lied to the Court and Wells Fargo during the course of this matter, beginning with the September 3, 2008 hearing and continuing for the duration of this matter. They specifically advised the Court and counsel that they could not obtain proof from Academy Bank that the alleged payments were paid to Wells Fargo because the payments were "electronically processed" and no copies were available. Ms. Works testified that Academy Bank would have a specific record of any payment processed through Academy Bank and that such evidence is routinely provided to customers at no charge or for a nominal $2.00 fee. Contrary to Debtor's testimony, the only impediment to obtaining proof of payment was the fact that the payments were never made.

As the prior judgment in this matter was premised upon false and misleading evidence supplied to the Court by the Debtors, it is

**ORDERED** as follows:

1.     Wells Fargo Bank, N.A.'s Motion for Relief from Order Entered December 22, 2008 Entitled: Memorandum Opinion and Order Denying Wells Fargo Bank N.A.'s Motion for Court to Enforce Terms of Stipulation and For Relief from the Automatic Stay is **GRANTED** and the prior order is **VACATED**.

---

[29] *See also Wilkin v. Sunbeam Corporation*, 466 F.2d 714, 717 (10TH CIR. 1972)
[30] *Wilkin* at 717.

2.     Wells Fargo Bank, N.A., its predecessors, successors and assigns, are hereby granted Relief from Automatic Stay pursuant to 11 U.S.C. §362 (a) of the Bankruptcy Code, for the Debtors failure to perform under the terms of the Stipulation approved by this Court on April 14, 2008.  Relief is granted to Wells Fargo solely to proceed *in rem* against the following described property:

> LOT 14, BLOCK 1, VADA VALLEY, COUNTY OF JEFFERSON, STATE OF COLORADO.

Purported Common Address:  9515 West 53rd Place, Arvada, CO 80002

3.     Such automatic stay is hereby terminated as to the above-described property and the WELLS FARGO BANK, N.A. may proceed to pursue its state law rights and remedies allowed under the Note and Deed of Trust against the property.  The provisions of Bankruptcy Rule 4001(a)(3) are waived and this Order shall be in full force and effect upon the entry of this order.

4.     The United States Trustee shall advise the Court on or before **April 10, 2009**, as to its intentions with regard to this case and any necessary referrals to the United States Attorney upon due investigation.

5.     Wells Fargo may seek sanctions for attorneys' fees and costs against the Debtors by separate motion filed on or before **April 17, 2009**.

DATED:  April 8, 2009, *nunc pro tunc* March 17, 2009.

BY THE COURT:

_____
United States Bankruptcy Judge